Good morning. I see Mr. Skar and Ms. Hahn. You may proceed, Mr. Skar. May it please the Court, I am Daniel Skar, attorney for Plaintiff Appellant Gloria Jean Krug. This case is on appeal from the Eastern District of Wisconsin. Ms. Krug was diagnosed with severe cerebral palsy from birth, resulting in a deformed left arm and left leg, very low intellectual functioning, and a sleep disorder resulting in daily fatigue. In fact, she lived with her parents until she was 50 years old, before moving on her own with parental assistance for about a year until she was let go by Walmart. In this case, the LJ committed reversible error by failing to consider Krug's impairments in combination, ignoring the combination of impairments and citing only three pages of evidence, three pages, to find a finding of a sedentary, to avoid a finding of a sedentary residual functional capacity, which would have resulted in a medical vocation allowance as of her 50th birthday. The LJ never mentions that Krug was never able to work full time and was forced to take family leave from Walmart before being let go by the company. In another error, the LJ also failed to follow the express requirements of Social Security Ruling 96.8 P, by failing to include the required initial function-by-function RFC assessment of the seven strength functions, sitting, standing, walking, lifting, carrying, pushing, pulling in the decision. This court has addressed this ruling and found in Jeske that the ALJ was not bound by the ruling. However, Jeske contains legal errors. First, as cited in my brief, Jeske does not address that this circuit has held that Social Security rulings or SSRs are not only binding on ALJs, but binding on all components of SSA error to be relied on as presses adjudicating cases. The district court's, in this court's, only way around an SSR is to attain a, I'm sorry. Counselor, you're using a lot of initialisms. Maybe they're normal in a specialty practice, but we're generalist judges. If you could use real English words, that would help us follow your argument. Yes, Your Honor. Yes. The district court, in this court's, only way around compliance with a Social Security ruling, an SSR, Your Honor, is if the... Sounds to me like Soviet Socialist Republic. Yeah, well, maybe so. We won't talk about the administration in this way, Your Honor. If the circuit obtains an acquiescence ruling, which are published under the authority of the Commission of Social Security, I'll quote that, the purpose of an acquiescence ruling in AR is to explain how the administration will apply a United States Court of Appeals circuit court holding that conflicts with the administration's interpretation of a provision of the Act of Regulations. And the SSA will apply a circuit court holding as explained in the AR or the acquiescence ruling to other cases in the circuit with the same issues that are involved. And that's out of a hallux of one of the Social Security publications, Your Honors. However, there is no such acquiescence ruling in the Seventh Circuit or any other circuit addressing SSR 96-8P, which is a ruling. And consequently, this court is bound by the language of the ruling outside of what Jetski says, which requires, this ruling requires an initial procedural functional capacity assessment. The statement of the state of the functioning of the claimant is in the decision must be given function by function with all seven strength demands. And that did not happen in this decision. Going through some of the cases cited in Jetski, they were distinguished in the brief already, but Masio was a Fourth Circuit case. It actually supported the requirement of that initial function by function assessment and probably discusses and explains the difference in the requirements in the initial residual functional capacity or RFC assessment from the steps that, steps four and five of the five-step process. Where it's mandatory at step five is mandatory to use exertional levels. Hendron is a Tenth Circuit case cited in Jetski, which this case confuses the initial assessment with a step five requirement assessment. So that case is just not reliable because they didn't even understand the difference between the two sections. Jankowski, a Second Circuit case, held the ruling, was basically the same ruling as Jetski, where they said it was a mandatory language of the ruling. Finally, DePower, which is an Eighth Circuit case, misrepresents the purpose of the ruling and fails to acknowledge the binding language of the ruling. Consequently, the holding in Jetski is basically just patently wrong. It's shot down by all those cases, and it must be distinguished in the decision must hold that a function by function initial residual functional capacity assessment assessing all seven strength demands should be required in every decision because it is mandatory. This decision was also patently not supported by substantial evidence because the ALJ only considered three, one, two, three pieces of evidence. Krug's function report, the only piece of evidence that she actually personally completed, but was the most heavily weighted and relied on piece of evidence and decision, relied on again and again. But the problem was Ms. Krug, who's obviously mentally deficient as well, didn't want to put all her disabilities down on paper. And so she basically said in that function report that she was pretty much doing great. And this is the clear outlier among the evidence, these on page 240 through 248, as none of the other evidence shows that she's able to do all the things that she said she could do by herself. It's just I think she didn't want to cast herself in a bad light. The only other two pages of evidence cited in the entire decision are pages 311 and 331, and this results in clear lack of substantial evidence. And further, although the claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record. And failure to fulfill this obligation is good cause to remand for the gathering of additional evidence. This case is a very short record. However, inspection, the record is highlighted by a number of glaring omissions that were evident to anybody who reviewed the decision, including the lack of a Department of Vocational Research's records, which would have contained vocational testing results and notes from Krug's job coaches, which have been highly probative evidence of her limitations in a work environment, as well as the omission of all the records from her primary care physician, Dr. Phillips, who treated her from 1997 through August of 2014. Again, probative and longitudinal evidence. Dr. Galinsky, who treated her for a year in 2016 and 2015 for her cerebral palsy and seizures, and the lack of evidence of her mental and physical limitations really demanded that the judge send her out for exams. Either the state agency or the ALJ should have sent her out for some exams outside just to see what kind of functions she really had. As to the credibility assessment, the summary analysis of the evidence was completed in a one sentence, a single sentence. Mr. Scarr, I understand that her lawyer at the hearing was asked whether the record was complete, and he said that it is. Doesn't that make it hard now for you to argue that the record was incomplete? It does make it hard, Your Honor. There were so many glaring omissions. Why I say it's glaring is because if you read through the record, there is listed all these medicals that I talked about was listed line for line, and the attorney didn't do anything about it, but the judge certainly had a chance to look at it. If you reviewed the record, it was glaring that these things were missing. I know this is a tough burden, and most ALJs don't have to have the burden, but in this case, it was important enough since we only have two pages cited by the judge that he went out and get these records. The credibility assessment summary analysis was completed in a single sentence, one sentence for credibility, and again, relying completely basically on the one piece of evidence completed by the plaintiff, the function report, followed by just the old not entirely consistent boilerplate language which is not allowed in the circuit, and it was actually no assessment was ever actually attempted. Finally, in this case, it's just like Browning said in my brief where the plaintiff was unable to live alone without assistance, so national job numbers became irrelevant, and local job numbers in the Fond du Lac area were required but not provided by law. While the ALJ found Krug was able to return to her cashier work, which really was all part-time work, the Phillips Cave address in my brief addresses the one-armed cashier job and has found that there's an inadequate basis for existence of this job. And Krug's attorney actually did object, but there was no response as far as by the location left on job numbers which were given in very round numbers, 49,000 and 1,000, and 10,000, but the VE never explained how the job numbers were derived, how he broke down the job numbers there and they were derived, and the numbers, this is just like foresight where the job numbers sounded like guesses. Plaintiff respectfully requests the court remand this decision for further consideration. Thank you. Ms. Hahn. Good morning. May it please the court, Your Honor, Mr. Skar. Lou Hahn on behalf of the Commissioner of Social Security. Let me start by correcting a couple of statements Mr. Skar made during his presentation about the reason Ms. Krug left her job at Walmart. I believe Mr. Skar referred to her being let go, and that is simply not the case. First, in her functional report that she submitted to the agency as part of her application for Ms. Krug described leaving on her own volition. She voluntarily left her job because of a customer service issue. There are also contemporaneous medical records showing that she was not fired for anything related to a medical impairment, physical or mental. This case, as Mr. Skar pointed out, does not have a lengthy record, but that burden and the burden with all claimants who are applying for disability insurance benefits is to provide all of the proof to furnish the ALJ with the evidence that the ALJ needs to make a decision. And in this case, as Judge Easterbrook points out, her previous counsel at the hearing confirmed the completeness of the record. And recently, in a non-precedential disposition from this court in Harris v. Saul just last month, this court said that an ALJ is reasonable in proceeding on a record that previous counsel confirmed was complete. And that's exactly what happened here. With regard to sending Ms. Krug out for further examinations, on this record, which again was not lengthy, it was nonetheless enough for an ALJ to make a decision on disability. Because again, the records which mostly predate her March 2, 2015 alleged date of disability onset, most of them are from 2013 and 2014. And in those records, again, Ms. Krug, contemporaneous with those notes, does not make any kind of allegation that she had problems and the kind of work limitations that would exceed what was in the ALJ's decision. Even the records postdating the March 2015 operative date in this case, again, her primary care physician in this case was Dr. Lisa Weber. And in March 2015, in a preoperative, she had some abnormal cervical cells removed later in 2015. In a preoperative report, Ms. Krug had the opportunity to tell Dr. Weber what problems she had. Specifically, she was asked about depression and anxiety. She was asked about her sleep issues. She reported none of those kind of symptoms. And that's what Dr. Weber put down in those notes from 2015. As for these other records that Mr. Scarr refers to, her previous counsel, again, didn't point the ALJ to that. The previous counsel requested relief from the appeals counsel, which is the appellate body within the agency, to review the ALJ's decision. And even in that brief to the agency's appeals counsel, her previous counsel didn't attach or provide this additional evidence. And in the court below, Ms. Krug, and also before this court, Ms. Krug hasn't made any kind of showing of what this vocational evidence or other evidence from a Dr. Phillips would be. Specifically, the evidence from Dr. Phillips, again, sounds like it far predates this operative date of March 2015. Again, in March 2015, that's when Ms. Krug voluntarily left her job, a job that she did at a substantial gainful activity level, as defined by the agency, since 2004. At Exhibit 9D, it shows all of her earning history. And despite her cerebral palsy, which she has had since birth, Ms. Krug was nonetheless able to earn a living above the substantial gainful activity levels for a number of years, over a dozen years. And it was 2015 when she left that work and then fell below that kind of earning threshold. But again, the ALJ had no evidence before him that the reason she's unable to work has anything to do with any of her impairments. He found two severe impairments, asthma and the cerebral palsy, as well as some non-severe impairments. And he proceeded through the five-step sequential evaluation process. And in this case, one glaring omission from Mr. Scarr's presentation is the ALJ's finding at Step 4. At Step 4, the sequential evaluation could have ended. The ALJ went in the alternative to the fifth step. But at Step 4, he found that Ms. Krug could return to her past job as a cashier, both as she actually performed that job, as well as how it's actually performed generally in the economy. And that finding was supported by the vocational experts' testimony. That finding wasn't challenged at the hearing. Her previous counsel had opportunities to question the vocational expert. And the question that her previous counsel had for the expert only related to whether the jobs that the vocational expert identified were unskilled. And the expert confirmed that all three of the sample jobs for Step 5 were unskilled, which, again, is not something that this court even needs to address because this was a Step 4 decision. Ms. Krug has waived any challenge to the Step 4 finding. And based on that alone, this ALJ's decision was supported by substantial evidence. There is simply no factual error or legal error that has been shown for this court to send this case back to the agency for further proceedings. The Social Security ruling issue has been decided in a published decision from this  And based on the accuracy of sister circus decisions, that issue has very much been decided here in the Seventh Circuit. Seeing no questions from the panel, the Commissioner will rest on his brief. And we ask that this court affirm the ALJ's decision. Thank you very much. Thank you. Mr. Skahr, you had used all your time, so we'll take the case under advisement. And the court will take a brief recess for a substitution of judges. Thanks to both counsel. Thank you, judges. Thank you.